Yongmoon Kim
Evan Lehrer
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
Email: ykim@kimlf.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CASSANDRA A. VALENTINE and ERLINDA G. FALDAS, *individually and on behalf of those similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC., and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No.<br><br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs, Cassandra A. Valentine and Erlinda G. Faldas, by way of Class Action Complaint against Defendants, Midland Funding, LLC, and Midland Credit Management, Inc. (and John Does 1 to 10), state:

### I.  NATURE OF THE ACTION

1.  Plaintiffs bring this action for damages against Defendants arising from Defendants' violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p.

2.  As described more fully below, Defendants violated the FDCPA against Plaintiffs and other New Jersey consumers by, *inter alia*, improperly suggested that the consumer's debt is subject to interest, late fees, and/or other fees by qualifying the balance of the debt as "Current."

Stating that a balance is the "Current Balance" misleads a least sophisticated consumer into erroneously determining that there are unknown rates of interest and/or fees continuing to accrue on the credit card debt. The term "Current," working as a modifier or qualifier of the term "Balance," suggests that Defendants' collection letters' stated amount due is fluid. Such misperception can lead the consumer into mis-prioritizing and misallocating his or her funds to pay Defendants' static debt instead of paying other bills, including bills with actual fluid amounts due.

3.     Further, as described more fully below, Defendants violated the FDCPA by overshadowing the validation notice by threatening litigation.

4.     Further, as described more fully below, Defendants violated the FDCPA by falsely, misleadingly, and deceptively suggesting to Plaintiffs and other similar New Jersey residents that Defendants would work with them for months before assigning the case to an attorney.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

6.     Venue in this action properly lies in the District of New Jersey as Defendants regularly do business in this district.

## III.     PARTIES

7.     Plaintiff, Cassandra A. Valentine ("Valentine"), is a natural person residing in Essex County, New Jersey.

8.     Plaintiff, Erlinda G. Faldas ("Faldas"), is a natural person residing in Morris County, New Jersey.

9. Defendant, Midland Funding LLC ("MF"), is a Delaware limited liability company with its principal place of business at San Diego, California. MF is engaged in the purchase and collection of defaulted consumer debts.

10. Defendant, Midland Credit Management, Inc. ("MCM"), is a Kansas corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108. MCM is engaged in the purchase and collection of defaulted consumer debts.

11. Defendants John Does 1 to 10 are fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

## IV. FACTS

### A. Background

12. Defendants are not in the business of extending credit, selling goods or services to consumers.

13. Defendants regularly collect or attempt to collect past-due or defaulted debts allegedly owed to others which were incurred primarily for personal, family or household purposes.

14. Defendants are in the business of collecting past-due or defaulted debts or alleged debts of natural persons.

15. Defendants use the mails, telephone, the internet and other instruments of interstate commerce in engaging in the business of collecting past-due or defaulted debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

16. Defendants are engaged in the collection business.

17. Defendants are litigious debt-buyers which purchase past-due and defaulted consumer accounts for pennies on the dollar, and then attempts to collect those accounts itself or through other collection agencies or collection law firms.

18. In connection with Defendants' efforts to collect consumer debts, Defendants routinely hire other debt collectors or collection attorneys to send dunning letters to consumers in an effort to collect the consumer debts.

19. Defendants file hundreds of thousands of collection lawsuits in the State of New Jersey. In fact, according to the New Jersey Superior Court Automated Case Management System ("ACMS") and statistics derived from LexisNexis® searches, MF has filed over 300,000 debt collection complaints within the past decade.

20. All actions taken in the name of MF are in fact taken by MCM.

21. Defendants are under common ownership and management; both are part of Encore Capital Group, Inc.

22. MCM directs the collection activity complained of herein on behalf MF.

23. At all times relevant hereto, MCM acted on behalf of MF in an attempt to collect the debts and with respect to the collection activity complained of herein.

24. At all times relevant hereto, the acts and omissions of MCM were incidental to or taken within the scope of the responsibilities given and authorized by MF.

25. Defendants have asserted that Plaintiffs incurred or owed certain financial obligations arising from an account which debt arose from one or more transactions which were primarily for Plaintiffs' personal, family, or household purposes ("Debts" or "Accounts").

26. The debts alleged to be owed by Plaintiffs and those similarly situated were incurred for personal, family or household purposes.

27. Defendants contend that the Accounts were past-due and in default.

28. The Accounts were past-due and in default when it was placed with or assigned to Defendants for collection.

29. Upon information and belief, Defendants were not assigned the arbitration rights, if any.

30. At all times relevant hereto, Defendants acted in attempts to collect the Debts.

31. In attempts to collect a debt from Valentine, Defendants mailed collection letters to Valentine on September 17, 2018 ("9/17/18 Letter") and October 3, 2018 ("10/3/18 Letter"); a true copy of the collection letters, but with redactions, is attached as ***Exhibit A***.

32. In an attempt to collect a debt from Faldas, Defendants mailed a collection letter to Faldas on October 17, 2018 ("10/17/18 Letter"); a true copy of the collection letter, but with redactions, is attached as ***Exhibit B***.

**B. False Threat of Interest**

33. Defendants' collection letters list the amount owed next to or below the words: "Current Balance".

34. "Current" is a temporal descriptor suggesting that the statement only refers to present moment.[1] Thus, "current" adds an unnecessary and confusing temporal qualifier to the term "balance due" which is inconsistent with a static-balance because, by definition, a static balance does not change over time.

---

[1] "Current is an adjective and means "presently elapsing," "occurring in or existing at the present time," and "most recent" (https://www.merriam-webster.com/dictionary/current) (last visited Aug. 20, 2019). *See also Current*, Dictionary.com (https://www.dictionary.com/browse/current) ("passing in time; belonging to the time actually passing[;]" "new; present; most recent") (last visited Aug. 20, 2019); *Current*, Cambridge Dictionary (https://dictionary.cambridge.org/us/dictionary/english/current) ("of the present time or most recent") (last visited Aug. 20, 2019).

35. It is Plaintiffs' understanding and belief that, under the terms and conditions applicable to their use of the Accounts, interest, late charges, and other charges and fees (such as annual fees) could accrue.

36. The least sophisticated consumer would reasonably presume and understand that a credit card account such as a Citibank credit card account would, if not paid in full every month, accrues interest and may accrue late charges and other charges and fees. Thus, the least sophisticated consumer would believe the truth of (a) the statement in Defendants' collection letters that the stated balance was merely the "Current Balance" as of the date of the respective collection letter, and (b) the implication that the amount due could or would increase if not promptly paid.

37. In fact, however, the balance of the Accounts could not increase and, even if it could increase, Defendants never intended to add, would not add, and did not add any lawful interest, late charges, or other fees and charges to increase the balance stated in Defendants' collection letters.[2]

38. Although Defendants' qualification of the amount due as "Current Balance" was literally true, such qualification was not a fact necessary to accurately disclose the amount of the Debt. The collection letters would have accurately stated the amount of the debt by stating "The amount due is $ [the exact amount due]." or "The amount of the debt is $ [the exact amount due]." By qualifying the amount due was the "Current Balance" however, Defendants failed to

---

[2] Through counsel, Plaintiff acknowledges decisions from the Seventh Circuit and, later, the Second Circuit addressing the optional use of a four-sentenced safe-harbor formula which, when that language is accurate, allows a debt collector to lawfully state the amount of the debt when that amount is changing over time. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016). Thus, the use of the formula will not provide a safe-harbor when it would be inaccurate to do so. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362 (7th Cir. 2018).

accurately state the amount of the Debts, and falsely, deceptively, and misleadingly represented to the least sophisticated consumer that the amount owed to the creditor would or could increase over time—indeed, that the amount owed had already changed by the time the collection letter was received days later.

39. Defendants' collection letters effect of leading a consumer to conclude that the amount due is not static but, instead, could increase, materially affects the decision of the least sophisticated consumer whether to pay the debt because, with limited resources and the inability to pay all debts, such a consumer would rationally pay a debt with a balance that was increasing due to interest before paying an otherwise identical debt with a static balance.

**C. Overshadowing**

40. On information and belief, the 9/17/18 Letter is the initial communication between Defendants and Valentine.

41. Defendants placed the validation notice on the back of the 9/17/18 Letter.

42. On the front of the 9/17/18 Letter, after the body of the letter Defendants close with "P.S. Any discounts or repayment options do not alter your validation rights as described on the reverse side."

43. Defendants placed this qualifier only after making several offers for Valentine to call Defendants at "(866) 361-0420."

44. Defendants demanded Valentine to reply with a phone call to be made at "(866) 361-0420" "by 11-01-2018".

45. Subsequently, Defendants demanded immediate action from, within the validation period, including to hear from Valentine and to receive payment from Valentine on or by October 31, 2018 in the 10/3/18 Letter.

46. Defendants shortened the window from November 1, 2018 (9/17/18 Letter) to October 31, 2018 (10/3/18 Letter).

47. Defendants demanded these further actions in the 10/3/18 Letter from Valentine by threatening attorney involvement and litigation.

48. The 10/3/18 Letter did not provide the validation language rather it required Valentine to review the earlier 9/17/18 Letter.

49. The least sophisticated consumer would not know what Defendants mean by the statement in their 10/3/18 Letter that "your validation rights as described in our previous letter to you."

50. In fact, the 9/17/18 Letter does not state which of the numerous paragraphs and statements are the validation rights.

51. A debt validation request cannot be made over the phone.

52. Only on the back side, before the validation language, Defendants provide that "Please understand that this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose."

53. Then Defendants provide the validation language.

54. The Defendants provide "Calls to and/or from this company may be monitored or recorded."

55. After additional information provided by the Defendants labeled "Basic Information", Defendants inconspicuously provide an address to "Send disputes or an instrument tendered as full satisfaction of a debt to[.]"

56. As understood by the Third Circuit, written correspondence, such as mail is recognized as the only valid method to dispute a debt.

57. Defendants overshadowed and inconspicuously stated the right of Valentine and other New Jersey residents to be informed of the protection of the validation notice.

58. Defendants overshadowed and inconspicuously stated the only valid method for Valentine and other similar New Jersey residents to dispute the debt.

### D. False, Misleading and Deceptive Behavior

59. Defendants provided and represented to Valentine in the 9/17/18 Letter:

> To welcome you to MCM, we'd like to offer you an opportunity to discuss flexible payment options to resolve this account.
>
> MCM is a different kind of debt collector. Here is what to expect:
> - A dedicated Account Manager will be assigned to your account
> - We will reach out to you by phone and mail over the months to come.
> - Useful tools and resources online at MCMPay.com

60. Next to the above statement, Defendants placed their seal labeled "Consumer Bill of Rights."

61. Less than a month later, Defendants mailed the 10/3/18 Letter.

62. As described above, the 10/3/18 Letter sought immediate action from Valentine.

63. The 10/3/18 Letter warned that, because Defendants "tried to reach you regarding this account" that Defendants were "considering forward this account to attorney in your state for possible litigation."

64. The 9/17/18 Letter misleadingly, deceptively, and falsely suggests that Defendants were flexible and would work with the Valentine over the coming months.

65. However, the 10/3/18 Letter shows that this is false. Defendants were inflexible and demanded immediate action from Valentine on or by October 31, 2018, less than two months since Valentine received the first 9/17/18 Letter.

66. Defendants' behavior was deceptive, misleading and false in suggesting to Valentine and similar New Jersey residents that Defendants would be flexible in working with consumers for months.

## V. CLASS ACTION ALLEGATIONS

67. It is Defendants' policy and practice to mail written collection communications, in the form exemplified in Exhibit A and Exhibit B, in an attempt to collect consumer debts.

68. Plaintiffs bring this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

69. Subject to discovery and further investigation which may cause Plaintiffs to modify, narrow or expand the following class definitions at the time Plaintiffs move for class certification, Plaintiffs seek certification of Classes initially defined as follows:

> **Class A: All natural persons to whom a letter from Midland Credit Management, Inc., was mailed to a New Jersey address on or after September 16, 2018, in an attempt to collect a Citibank debt to which stated the amount of the debt to be the "Current Balance."**
>
> **Class B: All natural persons to whom a letter in the same or similar form as the 9/17/18 Letter from Midland Credit Management, Inc., was mailed to a New Jersey address on or after September 16, 2018, in an attempt to collect a debt, where a letter in the same or similar form as the 10/3/18 Letter was subsequently sent.**

70. Plaintiffs seek to recover statutory damages, attorney's fees and costs on behalf of all Class members under the Fair Debt Collection Practices Act.

71. The Class Claims are those claims arising under the Fair Debt Collection Practices Act arising from a letter mailed in an attempt to collect a debt once owed or allegedly owed to Citibank which stated the amount of the debt to be the "Current Balance," as well as

sending the 9/17/18 Letter and the 10/3/18 Letter which contains false, misleading, and deceptive statements, including overshadowing and contradictory language.

72. The Classes are so numerous that joinder of all members is impracticable and, on information and belief, exceeds forty members.

73. There are questions of law and fact common to the members of the Classes that predominate over questions affecting only individuals.

74. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The FDCPA statutory scheme provides for statutory damages payable to each class member. A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort and expense.

75. Plaintiffs' claims are typical of the claims of the members of the Classes.

76. The questions of law and/or fact common to the members of the class predominate over any questions affecting only individual members.

77. Plaintiffs do not have interests antagonistic to those of the Classes.

78. The Classes, of which Plaintiffs are a member, are readily identifiable.

79. Plaintiffs will fairly and adequately protect the interests of the Classes and have retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, consumer and other complex litigation, and claims of the type asserted in this action.

80. The prosecution of separate actions by individual members of the Classes would run the risk of inconsistent or varying adjudications, which would establish incompatible

standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

81. Plaintiffs do not anticipate any difficulty in the management of this litigation.

## VI.   FIRST COUNT: VIOLATIONS OF THE FDCPA

82. The allegations contained in the preceding paragraphs are incorporated herein and are reasserted as if repeated at length.

83. Defendants are a "debt collector" as defined by 15 U.S.C. § 1692a(6).

84. The Debt is a "debt" as defined by 15 U.S.C. § 1692a(5).

85. Plaintiffs are a "consumer" as defined by 15 U.S.C. § 1692a(3).

86. The collection letters attached as Exhibit A and Exhibit B are "communications" as defined by 15 U.S.C. § 1692a(2).

87. Defendants' mailing of the collection letters to Plaintiffs in attempts to collect the Debts violated the Fair Debt Collection Practices Act (including, but not limited to, 15 U.S.C. §§ 1692e (including subsections 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), 1692e(9), and 1692e(10)), 1692f (including subsection 1692f(1)), and 1692g (including subsection 1692g(a), 1692g(a)(1), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b)).

88. Based on any one or more of those violations, Defendants are liable to Plaintiffs and to the Classes for an amount of money as allowed under 15 U.S.C. § 1692k including, but not limited to, damages, costs, and reasonable attorneys' fees.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Cassandra A. Valentine and Erlinda G. Faldas demand judgment against Defendants, Midland Funding, LLC, and Midland Credit Management, Inc., as follows:

A. For certification of this instant matter as a class action, appointing the named Plaintiffs as representatives of the Classes, and appointing the attorneys of Kim Law Firm LLC as class counsel;

B. An award of actual damages for Plaintiffs and the Classes pursuant to 15 U.S.C. § 1692k(a)(1) to the extent the recovery of attorney's fees and costs causes Plaintiffs or the Classes a negative tax consequence;

C. For statutory damages in favor of Plaintiffs and each Class pursuant to 15 U.S.C. § 1692k(a)(2);

D. For attorney's fees, litigation expenses and costs in connection with this action pursuant to 15 U.S.C. § 1692k(a)(3);

E. For pre-judgment and post-judgment interest; and

F. For such other and further relief as the Court deems equitable and just.

## VIII. JURY DEMAND

Plaintiffs demand trial by jury as to all issues so triable.

## IX. CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding except *George v. Midland Funding, LLC*, 19-2727 (3d Cir.).

KIM LAW FIRM LLC

*s/Yongmoon Kim*
Yongmoon Kim
*Attorneys for Plaintiffs*

Dated: September 16, 2019