Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CASSANDRA A. VALENTINE, *et al.*,

                Plaintiffs,

v.

MIDLAND FUNDING, LLC., *et al.*,

                Defendants.

Civil Action No. 19-18034 (ES) (MAH)

OPINION

**SALAS, DISTRICT JUDGE**

Before the Court is defendants Midland Funding, LLC ("Midland") and Midland Credit Management, Inc.'s ("MCM") (collectively, "Defendants") motion to compel arbitration. (D.E. No. 8). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court denies Defendants' motion.

**I.    Background**

Plaintiffs Cassandra Valentine and Erlinda Faldas ("Plaintiffs") bring a class action against Defendants for violations of the Fair Debt Collection Practices Act ("FDCPA") based on Defendants' "false threat of interest," "overshadowing," and "false, misleading, and deceptive behavior." (*See generally* D.E. No. 1 ("Complaint" or "Compl.")). Although it is not specifically alleged in the Complaint, it is undisputed that Plaintiffs incurred debts to Citibank, N.A. ("Citibank") through the use of their respective credit cards ("Debts" or "Accounts"). (*See* Pl. Mov. Br. at 23 ("Plaintiff Valentine's Citibank debt incurred from a 'Home Depot [a]ccount' and Plaintiff Faldas'[s] Citibank debt incurred from a 'Costco [a]ccount'.")). Defendants are "in the

business of collecting past-due or defaulted debts or alleged debts of natural persons" and "routinely hire other debt collectors or collection attorneys . . . to collect the consumer debts." (*Id.* ¶¶ 13 & 18). On September 17, 2018 and October 3, 2018, Defendants mailed Valentine two collection letters; on October 17, 2018, Defendants mailed Faldas a collection letter (collectively, the "Collection Letters"). (Compl. Pl. ¶¶31–32; D.E. No. 1–1 at 1; D.E. No. 1–2 at 2[1]). The Collection Letters informed Plaintiffs that their Accounts were sold to Midland, that Midland was now the sole owner of the Accounts, and that the Accounts would be serviced by MCM on behalf of Midland. (D.E. No. 1–1 at 1; D.E. No. 1–2 at 2). It is undisputed that the Accounts were past due and in default when Defendants acquired them. (Compl. ¶ 28).

The Collection Letters listed the amounts due on Plaintiffs' Accounts next to the words "Current Balance." (*Id.* ¶ 33). Plaintiffs allege that the use of the word "Current" suggests that the balance to be collect is "fluid." (*Id.* ¶ 2). Based on their "understanding and belief [of] the terms and conditions applicable to their use of the Accounts," Plaintiffs allege that Defendants' use of the term "Current" misled them to believe that the balance could increase from interest, late fees, and other charges, when such balance on their Accounts could not actually increase. (*Id.* ¶ 35–37). Even if the balance could increase, Plaintiffs allege that Defendants "never intended to add, would not add, and did not add any lawful" fees and charges to increase such balance. (*Id.* ¶ 37). In addition, Plaintiffs allege that "Defendants overshadowed and inconspicuously stated" Plaintiffs' rights by providing them with insufficient notice regarding their validation rights. (*Id.* ¶¶ 43–58). Finally, Plaintiffs contend that the Collection Letters "misleadingly, deceptively, and falsely" suggested to Plaintiffs that Defendants "were flexible and would work with" Defendants regarding their Accounts. (*Id.* ¶¶ 59–64). Yet, less than two months later, Plaintiffs received

---

[1] Citations to the Collection Letters refer to the pagination generated by the Court's Electronic Case Filing ("ECF") system.

letters threatening litigation. (*Id.* ¶¶ 59–66).

In lieu of answering the Complaint, Defendants filed a motion to compel arbitration. Defendants argue that Plaintiffs must individually arbitrate their claims because the Credit Card Agreements that govern Plaintiffs' Accounts "contain broad arbitration provisions that compel Plaintiffs to arbitrate any claims related to the subject accounts." (D.E. No. 8-1 ("Def. Mov. Br.) at 1). Plaintiffs oppose the motion. (D.E. No. 13 ("Pl. Opp. Br.")).

On June 30, 2020, upon finding that the Master Purchase and Sale Agreement and its relevant addenda that governed the sale of Plaintiffs' Accounts to Midland ("Master Purchase and Sale Agreement") was crucial to deciding Defendants' motion, the Court ordered the production and supplemental filing of the Master Purchase and Sale Agreement. (*See generally* D.E. No. 34). Pursuant to the Court's June 30, 2020 Order and further discussions before Magistrate Judge Michael A. Hammer on July 6, 2020, Defendants filed a redacted version of the Master Purchase and Sale Agreement. (*See* D.E. No. 41-1).

## II.    Discussion

The Court must decide whether the Motion should be considered under the Rule 12(b)(6) standard, as Defendants argue, or the summary judgment standard, as Plaintiffs argue. Defendants contends that "it is apparent from the face of the Complaint and documents relied on in the Complaint that Plaintiffs' claims are subject to enforceable arbitration agreements." (Def. Mov. Br. at 9). Specifically, Defendants argue that the Credit Card Agreements governing the Accounts, which include an enforceable arbitration provision, were "sufficiently incorporated by reference" in the Complaint and thus appropriate for consideration under Rule 12(b)(6). (*Id.* at 9–10 & 13–16). In response, Plaintiffs argue that this motion must be decided under Rule 56's summary judgment standard, which allows consideration of documents outside of the Complaint but after

3

further discovery. (Pl. Opp. Br. at 13–18). Plaintiffs contend that the Court cannot determine whether an agreement to arbitrate exists "without considering evidence extraneous to the Complaint." (Pl. Opp. Br. at 4). These documents, according to Plaintiffs, include at least the Credit Card Agreements, "the chain of custody regarding the right to compel arbitration," and the Master Purchase and Sales Agreement, which was not in the record but "allegedly assigned Defendants the right to compel arbitration." (*Id.* at 13–18).

"[W]hen it is apparent, based on 'the face of a complaint, and the documents relied upon in the complaint' […] 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12b(6) standard without discovery's delay.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Capital Leaders, LLC*, 832 F. Supp.2d 474, 482 (E.D.P.A. 2011). Summary judgement is appropriate, after relevant discovery, where "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded […] with additional facts sufficient to place the agreement in issue." *Id.* In its June 30, 2020 Order, the Court held that it could consider the Credit Cart Agreements under the Rule 12(b)(6) standard, because they were both integral to and explicitly relied on in Plaintiff's Complaints. (D.E. No. 34 ¶ 8 (quoting Compl. ¶ 35)). The Court also held that the Master Purchase and Sale Agreement could be considered without opening discovery on arbitrability. (*Id.* ¶ 9). The Court explained that Plaintiffs' rights to litigate their claims before the Court are premised on the fact that Defendants have the right to collect a debt" but "not the right to compel arbitration, both of which are governed by the Master Purchase and Sale Agreement." (*Id.* ¶ 10 (quoting Compl. ¶ 29 ("Upon information and belief, Defendants were not assigned the arbitration rights, if any.")).

Upon further review of the parties' arguments, however, it appears to the Court that Plaintiffs also challenge the *authenticity* of the Credit Card Agreements. Specifically, Plaintiffs argue that the Credit Card Agreements may not be correct because there are no personal identifiers linking Plaintiffs to the Credit Card Agreements.[2] (*Id.*). In addition, Plaintiffs argue that the credit card agreement governing Valentine's Account, allegedly mailed in March 2016, was identical to credit card agreements received in December 2016 by plaintiffs in other cases, who received the December 2016 agreements because Citibank allegedly amended its credit card agreement sometime between May 2016 and December 2016. (*Id.* at 24–29; D.E. No. 8-13 ("Valentine Agreement")). In other words, Plaintiffs argue that the Valentine Agreement was not the version of the credit card agreement that was in place in March 2016, when Valentine opened her credit card account with Citibank. Finally, in a footnote, Plaintiffs assert that "there is ambiguity" on how the credit card agreement that allegedly governs Faldas's Account ("Faldas Agreement") is associated with Faldas, where the Faldas Agreement is "marked '© 2016' but the cover page is dated 'February 28, 2018.'" (Pl. Opp. Br. at 28 n.11; D.E. No. 8-15 at 2[3]).

The Court notes that Plaintiffs raise issues that have apparently been rejected by courts in the Third Circuit. For example, courts have found that a lack of personal identifiers on the agreement does not sufficiently place at issue the validity of credit card agreements. *See Dotson v. Midland Funding, LLC*, 18-16253, 2020 U.S. Dist. LEXIS 9583, at *2 (D.N.J. Jan. 21, 2020) (finding that credit card agreements lacking personal identifiers do not sufficiently "cast doubt" on the existence of an arbitration agreement); *see Banks v. Barclays Bank Credit Servs.*, No. 17-00096, 2018 WL 6576414, at *3 (M.D. Pa. Oct. 30, 2018) (finding that even a sample credit card

---

[2]   The cover page and the "Fact Sheet" of the Faldas Agreement display Faldas's account number and her name. (Faldas Agreement at 2). It is thus unclear whether this argument even applies to Faldas.

[3]   Citations to Faldas Agreement refer to the pagination generated by the Court's ECF system.

5

agreement or exemplar of what the defendant normally sends customers is evidence of a valid agreement). The Court further notes that Plaintiffs do not claim that they received different credit card agreements than the ones submitted by Defendants, nor do they allege that the credit card agreement they received had different terms and conditions. More importantly, nowhere do Plaintiffs allege that the credit card agreements they entered into did not have the same arbitration clause. However, it is well-established law that, under the Rule 12(b)(6) standard, "a court may consider *an undisputedly authentic document* that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (emphasis added). Because Plaintiffs challenge the authenticity of the Credit Card Agreements, in an abundance of caution, the Court will not consider the Credit Card Agreements at this stage and will deny Defendants' Motion *without prejudice*. The Court will permit discovery limited to the issue of arbitrability,[4] including discovery as to the authenticity of the Credit Card Agreements. Once the parties have completed the discovery, Defendants may renew their motion to compel arbitration, if they deem it appropriate. At such time, the Court will review it pursuant to the standard applicable to motions for summary judgment under Federal Rule of Civil Procedure 56. *See Giudotti*, 716 F.3d at 776 ("After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.").

---

[4] The Court notes that this limited discovery will impose minimal burden on the parties as discovery is ongoing and fact discovery is scheduled to close on January 31, 2021. (*See* D.E. No. 39).

## III.     Conclusion

Defendants' Motion is DENIED *without prejudice*.  An appropriate Order accompanies this Opinion.

                                        *s/Esther Salas*_____
                                        **Esther Salas, U.S.D.J.**